UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

DARRELL THOMAS WILSON,

    Plaintiff,

vs.

NANCY A. BERRYHILL,
Acting Commissioner of Social Security,

    Defendant.

No. 2:16-CV-00005-LRS

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT,** *INTER ALIA*

**BEFORE THE COURT** are the Plaintiff's Motion For Summary Judgment (ECF No. 13) and the Defendant's Motion For Summary Judgment (ECF No. 14).

## JURISDICTION

Darrell Thomas Wilson, Plaintiff, applied for Title XVI Supplemental Security Income benefits (SSI) on August 9, 2012. The application was denied initially and on reconsideration. Plaintiff timely requested a hearing which was held on January 23, 2015 before Administrative Law Judge (ALJ) R.J. Payne. Plaintiff testified at the hearing, as did Medical Expert (ME), Margaret Moore, Ph.D.. A supplemental hearing was held on May 13, 2015 at which Vocational Expert (VE) Daniel McKinney testified. On June 10, 2015, the ALJ issued a decision finding the Plaintiff not disabled. The Appeals Council denied a request for review of the ALJ's decision, making that decision the Commissioner's final decision subject to judicial review.

**ORDER GRANTING DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT- 1**

The Commissioner's final decision is appealable to district court pursuant to 42 U.S.C. §405(g) and §1383(c)(3).

## STATEMENT OF FACTS

The facts have been presented in the administrative transcript, the ALJ's decision, the Plaintiff's and Defendant's briefs, and will only be summarized here. At the time of the administrative hearings, Plaintiff was 53 years old. He has past relevant work experience as a general clerk, survey worker, sanitor[1] and food deliverer. At the hearing, Plaintiff amended his alleged disability onset date to August 10, 2012. On that date, he was 50 years old.

## STANDARD OF REVIEW

"The [Commissioner's] determination that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence...." *Delgado v. Heckler*, 722 F.2d 570, 572 (9th Cir. 1983). Substantial evidence is more than a mere scintilla, *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975), but less than a preponderance. *McAllister v. Sullivan*, 888 F.2d 599, 601-602 (9th Cir. 1989); *Desrosiers v. Secretary of Health and Human Services*, 846 F.2d 573, 576 (9th Cir. 1988). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420 (1971). "[S]uch inferences and conclusions as the [Commissioner] may reasonably draw from the evidence" will also be upheld. *Beane v. Richardson*, 457 F.2d 758, 759 (9th Cir. 1972); *Mark v. Celebrezze*, 348 F.2d 289, 293 (9th Cir. 1965). On review, the court considers the record as a whole, not just the evidence supporting

---

[1] Another name for sanitation worker, per the VE's testimony. (AR at p. 83).

**ORDER GRANTING DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT- 2**

the decision of the Commissioner. *Weetman v. Sullivan*, 877 F.2d 20, 22 (9th Cir. 1989); *Thompson v. Schweiker*, 665 F.2d 936, 939 (9th Cir. 1982).

It is the role of the trier of fact, not this court to resolve conflicts in evidence. *Richardson*, 402 U.S. at 400. If evidence supports more than one rational interpretation, the court must uphold the decision of the ALJ. *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984).

A decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1987).

## ISSUE

Plaintiff argues the ALJ erred in discrediting his testimony about his symptoms and in discounting the opinions of Dr. Mabee.

## DISCUSSION

**SEQUENTIAL EVALUATION PROCESS**

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). The Act also provides that a claimant shall be determined to be under a disability only if his impairments are of such severity that the claimant is not only unable to do his previous work but cannot, considering his age, education and work experiences, engage in any other substantial gainful work which exists in the national economy. *Id*.

///

**ORDER GRANTING DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT- 3**

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. § 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S.Ct. 2287 (1987). Step one determines if he is engaged in substantial gainful activities. If he is, benefits are denied. 20 C.F.R. § 416.920(a)(4)(i). If he is not, the decision-maker proceeds to step two, which determines whether the claimant has a medically severe impairment or combination of impairments. 20 C.F.R. § 416.920(a)(4)(ii). If the claimant does not have a severe impairment or combination of impairments, the disability claim is denied. If the impairment is severe, the evaluation proceeds to the third step, which compares the claimant's impairment with a number of listed impairments acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity. 20 C.F.R. § 416.920(a)(4)(iii); 20 C.F.R. § 404 Subpart P, App. 1. If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled. If the impairment is not one conclusively presumed to be disabling, the evaluation proceeds to the fourth step which determines whether the impairment prevents the claimant from performing work he has performed in the past. If the claimant is able to perform his previous work, he is not disabled. 20 C.F.R. § 416.920(a)(4)(iv). If the claimant cannot perform this work, the fifth and final step in the process determines whether he is able to perform other work in the national economy in view of his age, education and work experience. 20 C.F.R. § 416.920(a)(4)(v).

The initial burden of proof rests upon the claimant to establish a prima facie case of entitlement to disability benefits. *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971). The initial burden is met once a claimant establishes that a physical or mental impairment prevents him from engaging in his previous occupation. The burden then shifts to the Commissioner to show (1) that the claimant can perform other substantial gainful activity and (2) that a "significant number of jobs exist in the

national economy" which claimant can perform. *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984).

**ALJ'S FINDINGS**

The ALJ found the following: 1) Plaintiff has "severe" medical impairments, those being: diabetes mellitus; hepatitis C; degenerative joint disease; status post arthroscopy on the left knee; affective disorder; anxiety-related disorder; and personality disorder, not otherwise specified, with antisocial traits; 2) Plaintiff's impairments do not meet or equal any of the impairments listed in 20 C.F.R. § 404 Subpart P, App. 1; 3) Plaintiff has the residual functional capacity (RFC) to perform less than the full range of medium work as defined in 20 C.F.R. § 416.967(c): he can lift no more than 50 pounds occasionally and can lift and carry 25 pounds frequently; sit for six hours in an eight hour workday; stand and walk six hours in an eight hour workday, in any combination, with normal breaks; occasionally crouch, kneel, crawl, climb ramps or stairs, with no climbing of ladders, ropes or scaffolds; should avoid all concentrated exposure to pulmonary irritants and hazards such as unprotected heights and hazardous machinery; is able to understand, remember and carry out both simple and more complex job instructions and tasks; can have superficial or occasional contact with coworkers and supervisors (but no over-the-shoulder type supervision); and is able to remain reasonably attentive and responsive in a work setting and is able to carry out normal work assignments satisfactorily; 4) Plaintiff's RFC precludes him from performing his past relevant work, but allows him to perform other jobs existing in significant numbers in the national economy as identified by the VE, including production assembler, electronics worker, garment sorter, packing line worker and hand packager. Accordingly, the ALJ concluded the Plaintiff has not been disabled at any time since August 10, 2012.

///

///

**ORDER GRANTING DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT- 5**

**CREDIBILITY**

Where, as here, the Plaintiff has produced objective medical evidence of an underlying impairment that could reasonably give rise to some degree of the symptoms alleged, and there is no affirmative evidence of malingering, the ALJ's reasons for rejecting the Plaintiff's testimony must be clear and convincing. *Garrison v. Colvin*, 759 F.3d 95, 1014 (9th Cir. 2014); *Burrell v. Colvin,* 775 F.3d 1133, 1137 (9th Cir. 2014). If an ALJ finds a claimant's subjective assessment unreliable, "the ALJ must make a credibility determination with findings sufficiently specific to permit [a reviewing] court to conclude that the ALJ did not arbitrarily discredit [the] claimant's testimony." *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir.2002). Among other things, the ALJ may consider: 1) the claimant's reputation for truthfulness; 2) inconsistencies in the claimant's testimony or between his testimony and his conduct; 3) the claimant's daily living activities; 4) the claimant's work record; and 5) testimony from physicians or third parties concerning the nature, severity, and effect of claimant's condition. *Id*.

Subjective testimony cannot be rejected solely because it is not corroborated by objective medical findings, but medical evidence is a relevant factor in determining the severity of a claimant's impairments. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001). The ALJ noted that Plaintiff testified to having chronic pain in multiple joints and that CHAS (Community Health Association of Spokane) records indicated he had been on narcotics for a long period of time, "however, there was suspicion he had been trading his prescription benzodiazepines and hydrocodone, and although he denied this allegation [citation omitted], there is very little support in the CHAS records for the need for long-term narcotics pain medication." (AR at p. 27). This is not a "clear and convincing" reason for discounting Plaintiff's credibility, considering there was no more than suspicion that Plaintiff was trading

///

**ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT- 6**

prescription medication and considering the ALJ offered his own non-medical opinion that Plaintiff did not need these medications on a long-term basis.

The ALJ pointed out that Plaintiff was experiencing only mild pain with flexion of the lumbar spine, his left hip x-ray was normal, and while he had documented degenerative disease of the left knee, he had recovered well after arthroscopy on the left knee and there was nothing in the record to support his testimony that he was also having problems with his right knee. (AR at p. 27). There indeed appears to be nothing in the medical record establishing a severe medically determinable impairment with regard to Plaintiff's right knee and the record establishes that Plaintiff recovered well from left knee arthroscopy in February 2013 ("good range of motion, minimal tenderness [and] minimal swelling"). (AR at p. 799). This was a clear and convincing reason to discount Plaintiff's credibility with regard to exertional limitations he attributed to knee pain.

The ALJ observed that while it was possible Plaintiff had increased pain while undergoing treatment for hepatitis C from January to April 2014, his "complaints were really quite minimal, and he managed to come out of treatment with a negative viral load, despite his alcohol relapse." (AR at p. 27). In December 2014, Plaintiff confirmed that his treatment for hepatitis C had been successful and there was no trace or sign remaining. (AR at p. 958). Accordingly, to the extent Plaintiff attributed any of his physical limitations to hepatitis C, the objective medical evidence cited by the ALJ constituted a "clear and convincing" reason for discounting Plaintiff's credibility.

The ALJ cited inconsistent statements made by Plaintiff as impacting his veracity as a witness. "One strong indication of the credibility of an individual's statements is their consistency, both internally and with other information in the case record." Social Security Ruling (SSR) 96-7, available at 1996 WL 374186 at *5. "In assessing the claimant's credibility, the ALJ may use ordinary techniques of

**ORDER GRANTING DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT- 7**

credibility evaluation, such as considering the claimant's reputation for truthfulness and any inconsistent statements in [his] testimony." *Tonapeytan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001). The ALJ noted that Plaintiff claimed to be a former law enforcement officer, although review of his earnings record and his work history report failed to support that claim. (AR at p. 27). Plaintiff made this claim during an August 2011 psychological evaluation by John Arnold, Ph.D. (AR at p. 396). Plaintiff does not deny he made such a claim, but contends it occurred when he was a homeless alcoholic. Plaintiff does not, however, claim he made the statement while under the influence of alcohol and Dr. Arnold noted that mental health testing suggested Plaintiff was capable of mentally manipulating numbers and letters, was making an appropriate effort during evaluation, and was capable of understanding simple instructions in the work setting. (AR at p. 396). Plaintiff also contends that because this statement was made prior to his alleged onset date (August 10, 2012), it cannot be considered because it is outside the relevant period, citing *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036-37 (9th Cir. 2007). *Lingenfelter* does not stand for the broad proposition that an ALJ may not consider statements made by a claimant **prior** to his alleged disability onset date. Instead, based on the particular facts presented in that case, the fact that Lingenfelter, **after** the relevant time period during which he claimed to be disabled and facing difficult economic circumstances, tried to work for nine weeks and failed because of his impairments, was not a clear and convincing reason for concluding his symptoms could not have precluded him from maintaining employment during the relevant time period. *Lingenfelter*, 504 F.3d at 1036-37.

Nor does *Lingenfelter* preclude consideration of the results of the June 29, 2012 psychological evaluation conducted by Dr. Arnold simply because those results pre-dated the alleged onset date of disability by a little over one month. Those results are appropriately considered in conjunction with the results of the mental health evaluations which took place after the alleged onset date of disability. That Dr.

**ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT- 8**

Arnold found Plaintiff's MMPI-2-RF[2] profile in June 2012 to be invalid (elevated beyond the level of interpretation such as to suggest over reporting of severe psychological, cognitive and somatic dysfunction) (AR at p. 386) was a "clear and convincing" reason for discounting Plaintiff's credibility when considered in conjunction with the record as a whole, as discussed herein.

A progress note from Frontier Behavioral Health dated March 4, 2014 contains a notation that Plaintiff had been "going through chemo [treatment] for liver ca, hepatitis, plus daily chemo meds at home . . . ." (AR at p. 1019). The ALJ construed this as the Plaintiff reporting he had liver cancer, but as Plaintiff notes, during this time period he was receiving chemotherapy (interferon) treatment for hepatitis C. (AR at pp. 1020-21). Accordingly, it is unclear from the record that Plaintiff asserted to anyone that he had liver cancer in addition to hepatitis C. Therefore, this was not a clear or convincing reason to discount Plaintiff's credibility.

Poor work history is an appropriate factor to consider when evaluating a claimant's credibility. *Thomas*, 278 F.3d at 959. Plaintiff testified he last worked in 2007 at a temporary job for a couple of months. (AR at p. 56). He testified that he performed a number of different jobs over the past 15 years, but most of them were very brief and his earnings were limited. (AR at pp. 56-57). Plaintiff attributed his sporadic and limited work history to being robbed when he was working as an assistant manager at a Pizza Hut around 1997. (AR at pp. 59-60). According to Plaintiff, he had been robbed four times since then, causing him to suffer from post-traumatic stress disorder (PTSD). (AR at p. 60). Because of the PTSD, Plaintiff asserted he could not work around people. (AR at p. 60). The ALJ found "[t]he claimant has had a very poor work history since 1995 and while this may support his testimony at the hearing that was when he was assaulted the first time, his testimony

---

[2] Minnesota Multiphasic Personality Inventory-2-Restructured Form.

**ORDER GRANTING DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT- 9**

of being assaulted four times is inconsistent with other claims (i.e, being assaulted three times . . . )." (AR at p. 27). The ALJ clearly gave some credence to Plaintiff's assertion that he has difficulty working around other people. As part of his RFC determination, the ALJ found that Plaintiff could only have superficial or occasional contact with coworkers and supervisors (but no over-the-shoulder type supervision). Furthermore, there is no inconsistency between Plaintiff testifying at the hearing that he had been robbed four times since 1997, while telling Dr. Arnold in June 2012 he had been robbed and beaten about three times. (AR at p. 386). Accordingly, Plaintiff's poor work history is not a clear and convincing reason for discounting his credibility.

The ALJ pointed out that Plaintiff has a "significant criminal history, including DUI, many arrests for assaults while drinking, trespass, open containers, disorderly conduct, and selling a medical drug without a prescription and possession of a medical drug without a prescription." (AR at p. 27). An ALJ may discredit a claimant's allegations based on relevant character evidence including criminal history. *Bunnell v. Sullivan*, 947 F.2d 341, 346 (9th Cir. 1991). Convictions for crimes of moral turpitude are a proper basis for an adverse credibility determination. *Allbidrez v. Astrue*, 504 F.Supp.2d 814, 822 (C.D. Cal. 2007). It is unclear whether any of Plaintiff's convictions were for crimes of moral turpitude or involved dishonesty and in any event, the ALJ did not explain the how Plaintiff's convictions impacted his credibility. Accordingly, this court cannot find Plaintiff's criminal history is a clear and convincing reason for discounting his credibility.

Evidence about daily activities is properly considered in making a credibility determination. *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). Here, the ALJ found:

> [Plaintiff's] activities of daily living are generally quite full, and include all self-care . . . household chores, and shopping . . . although he currently lives where chores are minimal. While he does have some social issues with anger and irritability

**ORDER GRANTING DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT- 10**

> . . ., he is able to take the bus, shop, attend his appointments, travel to Florida, attend AA meetings, and has a roommate . . . . He downplayed his work on computers at the hearing, but records . . . indicate he was working on computers and updating websites as a small side business, as well as his later claim . . . that he continued to work on computers and maintain his mother's church's website in Florida.

(AR at p. 28).

Plaintiff testified that while he did not "consult" for computers, he did help some of the people around his group residence with their computers. (AR at p. 70). On September 4, 2014, Plaintiff reportedly told his therapist at Frontier Behavioral Health that he had been working on computer and maintaining the website for his mother's church in Florida. (AR at p. 973). On August 7, 2014, he reportedly told his therapist that he was working on computers "and updating websites as a small side business." (AR at p. 975). And on May 13, 2014, when he was psychologically evaluated by W. Scott Mabee, Ph.D., Plaintiff reported he was living with a roommate with whom he did not have any conflicts and that he was independent for basic self-care. (AR at p. 952).

The medical record, as discussed below, provides substantial evidence in support of the ALJ's RFC determination and, in turn, supports the ALJ's discounting of Plaintiff's credibility, particularly the ALJ's conclusion that Plaintiff's daily living activities exceeded what he testified he was physically and mentally capable of doing. Plaintiff's daily living activities are a clear and convincing reason for discounting Plaintiff's credibility.

Although, as discussed above, not all of the reasons the ALJ offered for discounting Plaintiff's credibility are clear and convincing, enough of them are so as to constitute substantial evidence in support of the ALJ's ultimate credibility finding. *Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155. 1162-63 (9th Cir. 2008).

///

///

**ORDER GRANTING DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT- 11**

**MEDICAL OPINIONS**

It is settled law in the Ninth Circuit that in a disability proceeding, the opinion of a licensed treating or examining physician or psychologist is given special weight because of his/her familiarity with the claimant and his/her condition. If the treating or examining physician's or psychologist's opinion is not contradicted, it can be rejected only for clear and convincing reasons. *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). If contradicted, the ALJ may reject the opinion if specific, legitimate reasons that are supported by substantial evidence are given. *Id*. "[W]hen evaluating conflicting medical opinions, an ALJ need not accept the opinion of a doctor if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). The opinion of a non-examining medical advisor/expert need not be discounted and may serve as substantial evidence when it is supported by other evidence in the record and consistent with the other evidence. *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995).

Plaintiff alleges the ALJ improperly discredited the limitations opined by Dr. Mabee in favor of those opined by Dr. Moore, the medical expert who testified at the hearing. On the evaluation form which he completed for Washington Department of Social and Health Services (DSHS), Dr. Mabee opined that Plaintiff had moderate ("significant") limitations in his abilities to understand, remember, and persist in tasks by following detailed instructions; learn new tasks; and maintain appropriate behavior in a work setting. He further opined that Plaintiff had marked ("very significant") limitations in his abilities to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances without special supervision; communicate and perform effectively in a work setting; and complete a normal work day and work week without interruptions from

///

**ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT- 12**

psychologically based symptoms. (AR at p. 954). The VE testified that these limitations would preclude any type of competitive employment. (AR at p. 89).

The ALJ discounted Dr. Mabee's opinion, finding that it contradicted "clinical findings set forth in narrative treating and examining source medical reports of record." (AR at p. 29). The ALJ cited testimony from Dr. Moore that she saw no evidence of psychosis or significant anxiety and "felt there were inconsistencies . . . including what was said about the claimant's appearance and what he was actually able to do, which included getting along with his roommate, and engaging in work-like activity setting up and maintaining web sites, as well as the generally normal mental status exams and Trailmaking tests." (AR at p. 29).

In his report, Dr. Mabee noted that Plaintiff had been most recently seen in his office (NW Behavioral Health Clinic) by Dr. Arnold in June 2012, and before that in August 2011. (AR at p. 952). Dr. Mabee reviewed those prior evaluations to "structure" his evaluation. (AR at p. 952). In August 2011, Dr. Arnold indicated that Plaintiff scored within the average range on the MMSE (Mini-Mental State Examination) and "[h]is results on the Trails A & B were also with the normal range suggesting he is capable of mentally manipulating numbers and letters." (AR at p. 396). Dr. Arnold opined that Plaintiff was moderately limited in certain cognitive and social categories, but did not opine that there were any marked limitations. (AR at p. 395). As noted, in his June 2012 report, Dr. Arnold concluded Plaintiff's MMPI profile was invalid which suggested Plaintiff was "over reporting severe psychological, cognitive and somatic dysfunction." (AR at p. 386).

Plaintiff later became involved with Frontier Behavior Health Services. Dr. Moore testified there was nothing in the Frontier records that suggested the need for psychotherapy. (AR at p. 45). A review of the Frontier records supports Dr. Moore's testimony. At the hearing, Plaintiff's counsel asked Dr. Moore about an October 2014 note from Frontier. As Dr. Moore accurately testified, the diagnoses contained

**ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT- 13**

in that note (AR at p. 963), were carried forward from Plaintiff's first contact with Frontier in January 2013, and the same was true regarding the GAF score of 45.[3] That was an "intake" GAF score, not a current score. (AR at pp. 51-52). In his evaluation from May 2014, Dr. Mabee assigned the Plaintiff a GAF score of 55.[4] (AR at p. p. 954). Dr. Moore observed that there was nothing in the October 2014 note describing the Plaintiff as psychotic, no evidence of panic, nothing related to PTSD signs and symptoms, nor was Plaintiff "terribly anxious except for occasional issues around his housing and his roommates and that kind of thing." (AR at p. 52). Indeed, all indications are that the October 2014 mental status exam was entirely normal- e.g. patient has full insight; patient has good judgment; patient has good fund of knowledge with normal memory and normal language. (AR at pp. 962-63).

Similar assessments were made at CHAS earlier in 2014. In January 2014, it was reported that Plaintiff was oriented to time, place, person and situation; that his affect was normal; that he was negative for anhedonia[5], not agitated, not anxious, did

---

[3] A Global Assessment of Functioning (GAF) score of 41-50 means "serious" symptoms or "serious" impairment in either social, occupational, or school functioning. *American Psychiatric Ass'n, Diagnostic & Statistical Manual of Mental Disorders*, (4th ed. Text Revision 2000)(DSM-IV-TR).

[4] A Global Assessment of Functioning (GAF) score of 51-60 indicates "moderate symptoms (e.g. flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers)." *American Psychiatric Ass'n, Diagnostic & Statistical Manual of Mental Disorders*, (4th ed. Text Revision 2000)(DSM-IV-TR at p. 34).

[5] The inability to experience pleasure from activities usually found enjoyable.

**ORDER GRANTING DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT- 14**

not have pressured speech, did not have suicidal ideation; and was calm, pleasant and comfortable. (AR at p. 889). This assessment was repeated in February and March 2014. (AR at pp. 895 and 898).

As identified herein, and as set forth by Dr. Moore in her testimony (AR at pp. 41-53), there is evidence in the record which supports her opinion about Plaintiff's mental functional limitations and which is consistent with that opinion. Dr. Moore's opinion constitutes a "specific and legitimate" reason to discount Dr. Mabee's opinion and substantial evidence in support of the ALJ's RFC determination regarding Plaintiff's mental functional limitations.

Plaintiff indicated that his inability to be around people was the primary reason he could not work. (AR at p. 60). Plaintiff does not cite any medical opinions he asserts are consistent with his testimony about the severity of his physical limitations as opposed to those included as part of the ALJ's RFC determination.

## CONCLUSION

ALJ Payne rationally interpreted the evidence and "substantial evidence"- more than a scintilla, less than a preponderance- supports his decision that Plaintiff is not disabled.

Defendant's Motion For Summary Judgment (ECF No. 14) is **GRANTED** and Plaintiff's Motion For Summary Judgment (ECF No. 13) is **DENIED**. The Commissioner's decision is **AFFIRMED**.

**IT IS SO ORDERED.** The District Executive shall enter judgment accordingly and forward copies of the judgment and this order to counsel of record.

**DATED** this ___10th___ day of May, 2017.

*s/Lonny R. Suko*

LONNY R. SUKO
Senior United States District Judge

**ORDER GRANTING DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT- 15**